**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Justin Lewis Mitchell,

Plaintiff,

v.

NEWREZ LLC, Shellpoint Mortgage Servicing LLC, Caliber Home Loans Incorporated,

Defendants.

No. CV 24-02345 PHX CDB

**ORDER**

## I. Background

Plaintiff proceeds pro se in this matter. In the Amended Complaint Plaintiff alleges Defendants discriminated and retaliated against him in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"); discriminated and retaliated against him in violation of the Americans with Disabilities Act ("ADA"); and violated the Family Medical Leave Act ("FMLA"). (ECF No. 30). Plaintiff asserts he is a disabled veteran, and that he disclosed this status to Defendant Newrez when he was hired in December of 2019 as a "Litigation Paralegal II." (ECF No. 39 at 2).[1] Throughout

[1] Plaintiff alleges he requested "a standing desk due to a back injury sustained during honorable service in the United States Army." (ECF No. 30 at 7). Plaintiff asserts Newrez (the spelling of the entity used by Defendant) "accommodated his service-connected disability with a standing desk in early 2020." (ECF No. 39 at 2). Plaintiff further alleges that in June of 2024, after leaving Newrez, the Department of Veterans Affairs determined Plaintiff suffered from the service-connected conditions of PTSD, asthma, lumbosacral and thoracic strain, radiculopathy, and sciatic nerve issues, but the VA denied a service connection for generalized anxiety disorder, major depressive disorder, and prostatitis. (ECF No. 1 at 56).

his employment Plaintiff reported to Justin Bradley, Newrez's Deputy General Counsel. (ECF No. 39 at 3). Plaintiff contends he received "documented praise" for his work performance through June of 2022. (*Id.*). Plaintiff alleges that in June of 2022, "without notice," his position was "reclassified" from a salaried position to an hourly position, which "disrupt[ed] his pay," "caused financial hardship," and "exacerbated" his "service-connected disabilities." (*Id.*). Plaintiff alleges that in October of 2022, approximately two months after the reclassification of his position, he was placed on a performance improvement plan ("PIP") "shortly after engaging in protected activities." (*Id.*). Plaintiff further alleges that after receiving "emergency medical treatment at the Phoenix VA" on October 18, 2022, he "submitted discharge paperwork requesting medical leave/[paid time off], triggering NewRez's obligations under **USERRA, FMLA,** and **ADA.**" (*Id.*) (emphasis in original). He asserts "NewRez failed to engage in the interactive process or properly evaluate his leave under these statutes," but "[i]nstead NewRez took adverse actions, including withholding pay due to alleged timecard errors," "required excessive documentation," and "issu[ed] retaliatory performance actions, creating intolerable working conditions that culminated" in his resignation on November 4, 2022. (ECF No. 39 at 3).[2]

Defendants assert:

> Beginning in the late summer and early fall of 2022, Mr. Mitchell's performance in his position declined, and Mr. Mitchell failed to perform key aspects of his role. Due to these performance issues, Mr. Mitchell was coached on his performance, and Mr. Bradley met with him at the end of September, 2022 regarding ongoing performance deficiencies. Mr. Mitchell did not raise any issues regarding his pay or discuss any medical condition with Mr. Bradley in this meeting or prior to the meeting. Subsequently, Mr.

---

[2] In his resignation notice, sent to Justin Bradley, Plaintiff stated:

> Due to the disputed Performance Improvement Plan as well as the ongoing pay issues that has had significant impacts on my health and my family, I have lost confidence in the working relationship between myself and Shellpoint. These two issues have also exacerbated two medical disabilities sustained during my military service. With that being said, please use this email as my official notice of resignation effective immediately.

(ECF No. 1 at 32-33).

Mitchell's job performance did not improve, and he was placed on a Performance Improvement Plan ("PIP") on October 12, 2022. After being placed on the PIP, Mr. Mitchell reported he had not been paid for four days in the preceding pay period. Newrez investigated this and learned that while Mr. Mitchell had worked those days, he failed to follow Newrez's procedures to clock in and out on those days. Newrez promptly paid Mr. Mitchell for those days, and Mr. Mitchell was reminded of the obligation to clock in and out.

Also in October 2022, Mr. Mitchell was absent for work for a number of days. He requested paid time off ("PTO"), but did not follow appropriate company procedure for requesting time off in advance, nor did he specifically communicate with Mr. Bradley or Newrez's Human Resources Department about any medical condition.[3] Mr. Mitchell was provided with access to company policies regarding requesting time off under the Family and Medical Leave Act, but he did not follow these policies and request leave under the FMLA or leave as a reasonable accommodation under the ADA. Mr. Mitchell did request a sit/stand desk as a reasonable accommodation during this time period, but did not provide backup information about the request for a sit/stand desk. In short, Mr. Mitchell was in and out of work in the second half of October, but failed to follow appropriate company procedure for requesting leave. In this same time period, on or about October 26 and 27, Mr. Mitchell was technically at work, but seemingly completed no work and specifically failed to complete a task for outside counsel. He did not inform his supervisor or outside counsel of his inability to do so. Again during the latter half of October, 2022, Newrez was in the process of gathering information to discuss Mr. Mitchell's request for the sit-stand desk with him, when Mr. Mitchell without notice, on November 4, informed Mr. Bradley by email that he had

---

[3] In an email exchange on or about November 14, 2022, Mr. Bradley advised Plaintiff:

> … I did approve your PTO of 56 hours taken between October 17 and October 28 since you provided medical documentation. I did not approve the PTO request for another 40 hours on October 31–November 4. You advised medical documentation would be provided, and it is required for unscheduled absences of more than 3 days. You also did not follow our department practice of communicating with your manager about needed time off for scheduled or unscheduled absences. I always expect some form of communication to understand why an employee is going to need to take an extended set of absences from work so we can schedule duties appropriately, especially when we were on 3 weeks in a row of unscheduled absences and no notice or documentation was provided outside of the Workday request.

(ECF No. 1 at 36).

> lost confidence in the work environment. Thereafter, Mr. Mitchell immediately resigned from his position with Newrez.

(ECF No. 39 at 3-4).

In a letter dated January 10, 2024, approximately eight months prior to filing suit, Plaintiff demanded payment from Newrez in the amount of $250,000 "in exchange for agreed dismissal of all claims with prejudice." (ECF No. 1 at 48). In his Complaint Plaintiff sought damages for "Annual Salary = Approximately $50,000 x 20 years of work until general retirement age. Calculation based off missed opportunity for wages, physical, mental and emotional distress and any other damages decided by the Court." (ECF No. 1 at 13). In his Amended Complaint Plaintiff seeks compensatory, liquidated, consequential, and punitive damages, and "reasonable attorney fees and costs" notwithstanding that Plaintiff appears pro se. (ECF No. 30 at 21-22).

**II. The Instant Dispute**

Before the Court is Plaintiff's motion to compel discovery. (ECF No. 60). Plaintiff asserts "Defendant has provided incomplete and deficient responses" to his requests for discovery, i.e., his interrogatories and requests for production. (ECF No. 60 at 2). Plaintiff asks the Court for an order requiring Defendant to:

> Produce complete comparator data for Ashlei Shaw-Pulliam, Falisha Coleman, and other similarly situated employees as requested in RFP Nos. 7-9 and Interrogatory Nos. 5-8.
>
> Including but not limited to: all details, documents, and information pertaining to the notification, submission, processing, and approval/denial process under the ADA, and FMLA.
>
> Produce all HR/management communications regarding Plaintiff's employment, including Microsoft Teams messages, calendar invites, and other electronic communications as requested in RFP Nos. 12-15 and Interrogatory Nos. 10-13.
>
> Including but not limited to: Produce all Microsoft Teams communications and complete unedited email chains involving Justin Bradley, Mike Griffin, Chavez Turner, Plaintiff, HR and Internal Legal Leadership (Justin Bradley, Andrew Westle, Mike Griffin, Heather Ruth, Spencer Monses) regarding:

> • employment/personnel actions (negative or otherwise including who was supposedly supposed to notify me of the need to clock in and that I would be arbitrarily converted to an hourly associate),
> • the decision to monitor Plaintiff's conduct at work, and to what extent this was that done to other associates within Internal Legal,
> • the decision to unilaterally modify Plaintiff's timecard,
> • the decision to not send me the punch data I requested as was told I would get by Chavez Turner.
> • the decision to level a Rule 11 threat at me,
> • Plaintiff's requests for further training submitted,
> • requests for accommodations (approved, denied, and ignored),
> • time-off requests,
> • requests for me to handle assignments not originally assigned to me,
> • caseload size (number of cases assigned across both Plaintiff's normal portfolio and the recovery portfolio) including in relation to other employees within Internal Legal (Serena Monk, Ashlei Shaw-Pulliam, Paula Gonzalez, Shehelia [Insert Last Name], Brittney Gomez, Amber Costello) to show relativity,
> • SLAs sent to every other paralegal within Internal Legal and when they were sent (including what their adherence rate was when it was communicated and what it was in reality).

(ECF No. 60 at 8-9) (bracketing in original).

In response to the motion to compel Defendants argue, *inter alia*, that the motion to compel "fails to comply with LRCiv 37.1(a)" because the motion "does not have 'separate, distinct, numbered paragraphs' that allow the Court to review the request, the answer or response, and the reasons why the response is purportedly deficient." (ECF No. 65 at 4). Defendants also contend the motion to compel is premature because they continue to search for responsive documents, and argue they adequately responded to Plaintiff's interrogatories and requests for production.

Rule 37.1 of the Local Rules of Civil Procedure provides:

> (a) When a motion for an order compelling discovery is brought pursuant to Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure, the moving party shall set forth, separately from a memorandum of law, the following in separate, distinct, numbered paragraphs:
> (1) the question propounded, the interrogatory submitted, the designation requested or the inspection requested;

(2) the answer, designation or response received; and
(3) the reason(s) why said answer, designation or response is deficient.

Plaintiff argues denial of his motion to compel based on Rule 37.1 would be improper. (ECF No. 69 at 2). In his motion Plaintiff contends that, per the United States Supreme Court's opinion in *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275 (1946), "veterans' employment protection laws 'are to be liberally construed for the benefit of those who left private life to serve their country.'" (ECF No. 60 at 2). Plaintiff further asserts "[t]his principle of liberal construction applies not only to the substantive rights but also to the procedural mechanisms, including discovery, necessary to vindicate those rights." (*Id.*). In *Fishgold* the Supreme Court advised that the statutory provisions of the Selective Service Act (now the USERRA) are to be construed "as parts of an organic whole," and given "as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." 328 U.S. at 285. *Fishgold* did not involve a discovery dispute or the rules governing discovery, and the opinion does not stand for the proposition that the Federal Rules of Civil Procedure must be liberally construed to give advantage to a pro se veteran plaintiff.

In his motion Plaintiff also quotes *Palumbo v. DeVry University*, 964 F. Supp. 2d 935 (N.D. Ill. 2013) in support of his assertion that the rules governing discovery, i.e., the "procedural mechanisms" of litigating a civil case in federal court, must be applied with leeway given to a veteran pro se plaintiff. (ECF No. 60 at 2). Plaintiff quotes *Palumbo* as follows: "'Courts must ensure pro se litigants—especially veterans—receive robust discovery to level the playing field against institutional defendants.'" (*Id.*). This quote does not appear in *Palumbo*. Moreover, the sole issue in *Palumbo* was a veteran plaintiff's right to a waiver of the filing fee in a case involving a USERRA claim (USERRA contains a specific provision for waiver of the filing fee in cases brought by veteran plaintiffs for claims specific to the statute). Citing to *Davis v. Advocate Health Center Patient Care Express*, 523 F.3d 681, 683-84 (7th Cir. 2008), the *Palumbo* court noted: "Courts interpret USERRA broadly in favor of veterans seeking its protections. []

As part of that broad remedial scheme, USERRA provides that [n]o fees or court costs may be charged or taxed against any person claiming rights under this chapter.' 38 U.S.C. § 4323(h)(1)." 964 F. Supp. 2d at 936 (internal citation omitted). *Palumbo* speaks to the issue of when a complaint sufficiently alleges the plaintiff's status as a service member such that they may proceed without prepayment of costs and fees; the case does not address whether discovery rules must be broadly interpreted in favor of pro se veteran plaintiffs.

Pro se litigants, including veterans, who at their own volition proceed without counsel, must follow both the federal and the local rules of civil procedure. *See, e.g.*, *Washington v. Kijakazi*, 72 F.4th 1029, 1040 (9th Cir. 2023); *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) ("pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record"); *Carter v. Commissioner of Internal Revenue*, 784 F.2d 1006, 1008 (9th Cir. 1986). Although the federal courts generally liberally construe a pro se plaintiff's pleadings, such as a complaint, the Court is under no obligation to liberally construe the rules of civil procedure in favor of a pro se plaintiff, veteran or otherwise.

Plaintiff's motion to compel is ten pages in length and attaches 43 pages of exhibits. Although Plaintiff attaches his First Set of Interrogatories, his First Set of Requests for Production, and his Second Set of Requests for Admissions to his reply in support of his motion, Plaintiff does not provide Defendants' actual responses ("answer, designation, or response received"), which he has deemed "insufficient" to the requests for discovery. Without this information the Court would have no means of assessing the merits of Plaintiff's motion. Accordingly, the motion does not comply with Local Rule 37.1(a) and the motion could properly be stricken for Plaintiff's failure to comply with the Local Rules of Civil Procedure. However, Defendants have supplied their responses to Plaintiff's discovery requests (ECF No. 65-1), which allows the Court to consider the motion to compel on the merits notwithstanding Plaintiff's failure to comply with Local Rule 37.1(a). In the interest of judicial efficiency the Court will decide the

motion on the merits. Plaintiff is warned that in the future any motion to compel must comply with Local Rule 37.1(a) and any future failure to comply with this rule will result in the subject motion being summarily stricken from the record.[4]

## III. Governing Law

### A. Federal rules governing discovery

Federal Rule of Civil Procedure 26(b)(1) provides:

> … Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The Court has broad discretion to compel or deny discovery. *E.g.*, *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). The amendments to Rule 26(b) encourage trial courts to exercise their broad discretion to limit discovery to avoid abuse and overuse. *E.g.*, *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 601-04 (D. Nev. 2016). When "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issue," a motion to compel may be denied. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). All discovery is subject to reasonable limitations by the Court, and declining to compel the disclosure of information which is only minimally relevant to a claim is not an abuse of discretion. *See, e.g.*, *Hallet*, 296 F.3d at 751.

---

[4] Additionally, attached to Plaintiff's reply in support of his motion to compel is a published legal opinion. Plaintiff is advised to cease the practice of attaching published legal opinions to his pleadings. Plaintiff should cite to any published controlling legal opinion, in support of any argument he wishes to make, in the body of his argument.

Additionally, Rule 26 expressly limits discovery to that which is proportional to the needs of the case. A court may restrict or prevent discovery if it determines it will be burdensome, duplicative, unnecessarily costly, or insufficiently probative to the issues in the litigation. *See Ragaller v. Ace Am. Ins. Co.*, No. CV-15-327, 2016 WL 10599508, at *1 (D. Ariz. Sept. 16, 2016); *United States v. My Left Foot Children's Therapy, LLC*, No. 2:14-cv-01786, 2017 WL 10442695, at *3 (D. Nev. Apr. 14, 2017). To this end, the Court "need not condone the use of discovery to engage in fishing expedition[s]." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (internal quotations omitted).

Rule 37 of the Federal Rules of Civil Procedure authorizes motions to compel discovery. A party seeking to compel discovery has the burden of establishing the request satisfies the relevancy requirement and the party opposing discovery has the burden of supporting its objections and establishing the requested information falls outside the scope of discovery contemplated by Rule 26. *See Roehrs v. Minnesota Life Ins. Co.*, 228 F.R.D. 642, 645 (D. Ariz. 2005); *Briggs v. County of Maricopa*, No. CV-18-02684, 2021 WL 1725553, at *2 (D. Ariz. Apr. 30, 2021); *Donges v. USAA Fed. Sav. Bank*, No. CV-18-00093, 2018 WL 11317238, at *2 (D. Ariz. Nov. 13, 2018).

**B. Governing substantive law**

Plaintiff brings claims pursuant to the USERRA, the ADA, and the FMLA. The elements of these causes of action inform whether the sought-after discovery is relevant to Plaintiff's claims for relief.

**1. The USERRA**

Plaintiff asserts Defendants violated 38 U.S.C. § 4311(a) because they reclassified his position after he disclosed his military status;[5] denied accommodations for service-connected disabilities; withheld benefits of employment; created hostile working conditions; and failed to maintain his employment status. (ECF No. 30 at 12-13). He further alleges Defendants violated § 4311(b) because they initiated a pretextual PIP after

---

[5] It is noted that, per the Complaint, Plaintiff disclosed his military status in 2019 when he was hired, and his position was reclassified in 2022.

he asserted his USERRA rights; "[u]nilaterally modif[ied] time records after protected activity;" "threaten[ed] sanctions for asserting USERRA rights;" failed "to investigate reported violations;" "[i]ntensif[ied] hostile conditions after complaints;" and denied "leave and accommodation requests in retaliation." (ECF No. 30 at 13-14).

The USERRA prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3). The relevant statutes provide, *inter alia*, that veterans "shall not be denied … retention in employment, promotion, or any benefit of employment" on the basis of their status as a service member or veteran. 38 U.S.C.A. § 4311(a). USERRA defines a "benefit of employment" as:

> … any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes ... the opportunity to select work hours or location of employment.

38 U.S.C.A. § 4303(2). *See also Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 311 (4th Cir. 2001).

The USERRA recognizes claims for discrimination and retaliation. *See Huhmann v. Federal Express Corp.*, 874 F.3d 1102, 1105 (9th Cir. 2017) (outlining the elements of an USERRA discrimination claim); *Wallace v. City of San Diego*, 479 F.3d 616, 624-25 n.1 (9th Cir. 2007) (outlining the elements of an USERRA retaliation claim). The first step in a USERRA discrimination or retaliation claim requires the employee to establish they suffered a materially adverse employment action. *See Lisdahl v. Mayo Found.*, 633 F.3d 712, 720 (8th Cir. 2011); *Posin v. City of Orange*, No. CV150120, 2016 WL 5858706, at *3 (C.D. Cal. Jan. 18, 2016). A materially "adverse employee action" includes termination, demotion, suspension, loss of benefits, and reduction in pay. *E.g.*, *Kitlinski v. Merit Sys. Prot. Bd.*, 857 F.3d 1374, 1381 (Fed. App. 2017). Minor changes in job duties, without an adverse change in title or pay, are not adverse actions. *See Durant v. MillerCoors, LLC.*, 415 F. App'x 927, 930 (10th Cir. 2011) ("less agreeable employment circumstances, which do not describe drastically different job duties, [do]

not constitute an adverse action or denial of a benefit of employment." (internal quotations omitted)). Reprimands for violating internal policies requiring formal or informal counseling and reassignment to a different position without a reduction in pay are not adverse employment actions. *See Kitlinski*, 857 F.3d at 1382; *Conners v. Billerica Police Dep't*, 679 F. Supp. 2d 218, 226-27 (D. Mass. 2010) (holding that reprimands and counseling, absent some "tangible" job consequence, are not adverse actions); *Dominguez v. Miami-Dade Cnty.*, 669 F. Supp. 2d 1340, 1351 (S.D. Fla. 2009) (holding formal or informal counseling is not an adverse action).

The federal courts apply a two-part test to § 4311 discrimination and retaliation claims. First, the employee has the burden to show by a preponderance of the evidence that their protected status, i.e., their status as a uniformed service member or veteran, was a substantial, motivating factor in an adverse employment action. *E.g.*, *Huhmann*, 874 F.3d at 1105; *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898-99 (9th Cir. 2002); *Sheehan v. Department of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001). If the employee meets this threshold showing the employer must then establish it would have taken the same action without regard to the employee's protected status. *See Huhmann*, 874 F.3d at 1105. *See also Belaustegui v. International Longshore & Warehouse Union*, 36 F.4th 919, 924 (9th Cir. 2022). A retaliation claim requires an additional threshold showing that the employee exercised their USERRA rights prior to the adverse action, *see Wallace*, 479 F.3d at 624, but otherwise the burden-shifting framework for discrimination and retaliation claims under USERRA is identical. *See Huhmann*, 874 F.3d at 1105; *Wallace*, 479 F.3d at 624; *Espinoza v. City of Seattle*, 458 F. Supp. 3d 1254, 1270 (W.D. Wash. 2020).

Under the USERRA, military status "is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Campbell v. Catholic Cmty. Servs. of W. Wash.*, No. C10-1579, 2012 WL 13020051, at *2 (W.D. Wash. Aug. 1, 2012) (citation and internal quotations omitted). The Ninth Circuit had advised the district courts that they may consider a "variety of factors" in determining whether an employer had discriminatory motivation, including:

> … proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Espinoza*, 458 F. Supp. 3d at 1272 (citations omitted). In *Sharpe v. Department of Justice*, 916 F.3d 1376 (Fed. Cir. 2019), a case involving a USERRA discrimination claim, the court found a similarly situated "comparator" was a service member who worked at the same location under the same supervisor as the plaintiff, and also filed a USERRA claim.

In order to prevail on a claim of constructive discharge the employee "must show some aggravating factors, such as a continuous pattern of discriminatory treatment," i.e., that the employee "was subjected to incidents of differential treatment over a period of months or years." *Wallace*, 479 F.3d at 626 (internal quotations omitted). The plaintiff must also show the

> … harassing behavior was sufficiently severe or pervasive to alter the conditions of his employment. To determine whether conduct is severe and pervasive, the court looks at the context of the alleged harassment to determine its frequency and severity, whether it is physically threatening or humiliating, and the extent to which it unreasonably interferes with the employee's work performance. He must also establish that the offending behavior creates an abusive working environment and that the harassment was both objectively and subjectively offensive.

*Hanson v. County of Kitsap*, 21 F. Supp. 3d 1124, 1146 (W.D. Wash. 2014) (internal quotations and citations omitted).

**2. The ADA**

Plaintiff alleges he is a "qualified individual with disabilities" pursuant to the ADA, based on the Veteran's Administration's "documentation and ratings of service-connected disabilities" and because he is substantially limited with regard to major life activities. (ECF No. 30 at 14). Plaintiff alleges Defendants violated the ADA by

reclassifying his position "after disability disclosure;" denying reasonable accommodations; creating a hostile work environment; implementing a "pretextual PIP;" failing to engage in an interactive process; denying the use of accrued paid time off for medical treatment; refusing a request for flexible scheduling; ignoring accommodation requests; requiring excessive medical documentation; and "[t]reating non-military medical accommodations differently." (ECF No. 30 at 15-16). Plaintiff further asserts Defendants retaliated against him in violation of 42 U.S.C. § 12203(a) by implementing a PIP "after accommodation requests;" "intensifying hostile conditions after complaints;" threatening sanctions for asserting his ADA rights; failing to investigate claims of discrimination; constructively discharging Plaintiff; and modifying time records. (ECF No. 30 at 16).

> The ADA provides that no employer "shall discriminate against a qualified individual on the basis of disability in regard to ... discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a). An employer engages in unlawful discrimination under the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability[.]" 42 U.S.C. § 12112(b)(5)(A); *see Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) …. An employer has a duty to engage in an interactive process with a disabled individual to identify reasonable accommodations, ... and the failure to do so constitutes unlawful discrimination if a reasonable accommodation would have been possible, *see Snapp*, 889 F.3d at 1095. [footnote 3: "[T]here exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation." ….]
>
> To establish an ADA discrimination claim, a plaintiff must show that (1) [they are] disabled; (2) [they are] a qualified individual, meaning [they] can perform the essential functions of [their] job; and (3) the defendant failed to provide a requested reasonable accommodation, failed to engage in an interactive process where a reasonable accommodation would have been possible, or terminated the plaintiff because of [their] disability. ...

*Cooper v. Dignity Health*, 438 F. Supp. 3d 1002, 1008 (D. Ariz. 2020) (internal citations omitted).

"A prima facie case of retaliation requires a plaintiff to show: (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Coons v. Secretary of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (citation and internal quotation marks omitted), *quoted in Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009). Moreover, "ADA retaliation claims have been historically redressed *solely by equitable relief* pursuant to 42 U.S.C. § 2000e-5(g)(1)." *Alvarado*, 588 F.3d at 1268 (emphasis added), *citing Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1067-69 (9th Cir. 2005). *See also Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 863-66 (9th Cir. 2017). To prevail on an ADA hostile work environment claim, Plaintiff must show that he is a qualified individual with a disability; he suffered from unwelcome harassment; the harassment was based on his disability or a request for accommodation; the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and Defendants knew or should have known of the harassment and failed to take prompt remedial action. *See Mattioda v. Nelson*, 98 F.4th 1164, 1173-74 (9th Cir. 2024); *Cooper*, 438 F. Supp. 3d at 1015.[6]

[6] "When determining whether an environment was sufficiently hostile or abusive, courts examine all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance." *Cooper*, 438 F. Supp. 3d at 1016 (internal quotations omitted). *See also Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (holding an abusive working environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment" (internal quotations and citation omitted)); *Maese-Thomason v. Embry-Riddle Aeronautical Univ.*, No. CV-20-08338, 2023 WL 5822513, at *21 (D. Ariz. Sept. 8, 2023).

In *Cooper*, the court found discipline for excessive tardiness, a schedule change, the denial of a reasonable accommodation, and the employee's administrative leave were not sufficiently harassing or abusive to support a hostile work environment claim under the ADA, holding a plaintiff could not prevail when "the behavior on which [they] primarily [rely] consists of employment decisions with which [they] disagreed, not physical or verbal conduct of a harassing nature." *Cooper*, 438 F. Supp. 3d at 1017. In support of this holding the *Cooper* court cited *inter alia*, *Meirhofer v. Smith's Food & Drug Centers, Inc.*, 415 F. App'x 806, 807 (9th Cir. 2011), *and Mallard v. Battelle Energy Alliance, LLC*, No. 12-CV-00587, 2013 WL

The Ninth Circuit has advised the district courts to apply the burden shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1983) in the context of ADA retaliation claims. *See T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.* , 806 F.3d 451, 472-73 (9th Cir. 2015). Accordingly, with regard to his ADA retaliation claim, Plaintiff must make out a prima facie case that he was engaged in protected activity, that he suffered an adverse action, and that there was a causal link between the activity and the action. *Id.* at 473. The standard for the "causal link" "is but-for causation," a "stringent test." *Id. See also Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019). "[T]he stronger 'but-for causation' standard serves to close the door on employees seeking to file even more frivolous retaliation claims by disallowing an employee, who perceives his or her own impending termination, to shield against [those] imminent consequences by pursuing some form of protected activity." *Shaninga v. St. Luke's Med. Ctr. LP*, No. CV-14-02475, 2016 WL 1408289, at *11 (D. Ariz. Apr. 11, 2016) (brackets in original), *quoted in Cooper*, 438 F. Supp. 3d at 1016. Causation may be inferred from the temporal proximity between the protected activity and the alleged retaliation, *see Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003), but the connection in time must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Ninth Circuit has "required temporal proximity of less than three months between the protected activity and the adverse employment action for the employee to establish causation based on timing alone." *Cooper*, 438 F. Supp. 3d at 1015 (collecting cases).

---

2458620, at *9 (D. Idaho June 6, 2013). The *Mallard* court concluded the conduct the plaintiff experienced over a five month period, i.e., forced unpaid leave, physical and psychiatric exams, the threat of termination, denial of a requested return-to-work form, and a performance improvement plan, fell "far short of the severe, pervasive harassment needed to support a hostile work environment claim." 2013 WL 2458620, at *9. *Cooper* also cites *Linder v. Potter*, No. CV-05-0062, 2009 WL 2595552, at *12 (E.D. Wash. Aug. 18, 2009), denying a hostile work environment claim where the plaintiff's employer "[denied] his request for continued sick leave, [declared] him AWOL after he properly requested additional sick leave, summon[ed] him to an investigative interview … and den[ied] his request for a reasonable accommodation."

The scope of discovery in ADA cases includes obtaining information about comparators from their personnel files, even if they are non-party employees. *See Lauer v. Longevity Med. Clinic PLLC*, No. C13–0860, 2014 WL 5471983 at *5 (W.D. Wash. Oct. 29, 2014). Pursuant to the holding in *Jackson v. Montgomery Ward & Co., Inc.*, discovery in disparate treatment cases must be broader than the specific individualized facts upon which the plaintiff's claim is based. *See* 173 F.R.D. 524, 528 (D. Nev. 1997). The court should allow broader discovery to ensure the plaintiff has access to potentially helpful evidence for their discrimination claim. *Id.* For purposes of establishing a prima facie case of discrimination, "individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. City of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Accordingly, the category of proper comparators includes employees of the defendant who engaged in conduct similar to that of the plaintiff. *See Simpson v. DeJoy*, 641 F. Supp. 3d 772, 788-89 (D. Ariz. 2022).

**3. The FMLA**

Plaintiff alleges Defendants violated the FMLA, i.e., the provisions of 29 U.S.C. § 2615(a)(1), by "[f]ailing to provide required FMLA notices;" "[d]enying FMLA leave requests despite eligibility;" "failing to advise of FMLA rights when on notice of qualifying condition;" "[r]efusing to process FMLA paperwork;" "[c]reating barriers to FMLA leave usage;" and "[i]gnoring medical documentation." (ECF No. 30 at 17). Plaintiff further contends Defendants wrongfully retaliated against him, in violation of 29 U.S.C. § 2615(a)(2), by implementing a PIP after Plaintiff filed requests for FMLA; "unilaterally" modifying time records following his requests for leave; "[i]ntensifying hostile conditions after FMLA inquiries;" "[c]onstructively discharging Plaintiff for attempting to exercise FMLA rights;" "[t]hreatening sanctions for asserting FMLA rights;" "[f]ailing to investigate FMLA violations;" and "[t]aking adverse actions after protective activities." (ECF No. 30 at 18). Plaintiff contends the "temporal proximity between Plaintiff's FMLA requests and Defendants' adverse actions," *inter alia*, "demonstrates retaliatory intent." (*Id.*).

The FMLA creates a right for an employee to use certain amounts of leave for protected reasons. *See Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011). The FMLA also prohibits an employer from interfering with, restraining, or denying the exercise of any right provided under the Act. *See* 29 U.S.C.A. § 2615. *See also, e.g.*, *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132-33 (9th Cir. 2003). "[A]dverse employment actions taken against employees for exercising rights under FMLA should not be construed as retaliation or discrimination, but rather as interference with rights guaranteed by the statute." *Foraker v. Apollo Grp., Inc.*, 427 F. Supp. 2d 936, 940 (D. Ariz. 2006), *citing Bachelder v. America W. Airlines, Inc.*, 259 F.3d 1112, 1124 (2001).

To prevail on an FMLA interference claim, the plaintiff must show by a preponderance of the evidence that they took or requested leave, the employer subjected them to an adverse employment action, and the taking of or requesting protected leave was causally related to the adverse employment decision. *See Bachelder*, 259 F.3d at 1125; *Cheeks v. General Dynamics*, 22 F. Supp. 3d 1015, 1040-41 (D. Ariz. 2014). A plaintiff may prove an interference claim "by using either direct or circumstantial evidence, or both." *Bachelder*, 259 F.3d at 1125. Firing or demoting an employee, or reassigning them with significantly different responsibilities, or making a decision that causes a significant change in the employee's salary or benefits, are "adverse actions." *See Cates v. Public Emp. Ret. Sys. of Nev.*, 357 F. App'x 8, 10 (9th Cir. 2009), *cited in Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000). In contrast, the limited reassignment or reallocation of an employee's duties constitutes only an insignificant change in their employment status and is not an adverse employment action. *See Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000). And, in *Mahaffie v. Potter*, 434 F. Supp. 2d 1041, 1049 (D. Kan. 2006), the court found subjecting an employee to close supervision was not an adverse employment action for purposes of a FMLA claim. Moreover, the plaintiff must show they actually requested leave under the FMLA prior to the alleged "interference," i.e., the alleged "retaliatory" action. *See Mahaffie*, 434 F. Supp. 2d at 1048; *Rossi v. Amica Mut. Ins. Co.*, 446 F. Supp. 2d 62, 69 (D.R.I. 2005).

### IV. Analysis of Motion to Compel

Plaintiff contends: "Defendant has provided zero comparator information;" and that "Defendant's production in [the] area of [management communications] is not merely incomplete but appears tactically selective," asserting Defendant has "selectively produced partial email chains that omit critical portions of communications *that Plaintiff already possesses in their complete form*." (ECF No. 60 at 3-4) (emphasis added). Plaintiff also asserts "[c]ommunications between managers and HR regarding Plaintiff's employment are highly probative of the employer's knowledge, intent, and decision-making process." (ECF No. 60 at 6).

Defendants assert Plaintiff's interrogatories and requests for production exceed the amount allowed by the Court. Defendants also contend Plaintiff's interrogatories and requests for production are "vague and overbroad." (ECF No. 65 at 1). Defendants state that after the parties met and conferred Defendants agreed to further review their records to determine whether additional responsive documents could be located and produced. (ECF No. 65 at 1-2). Defendants assert that notwithstanding their willingness to further review their records for responsive documents, Plaintiff filed the pending motion to compel which Defendants contend is "premature and unnecessary." (ECF No. 65 at 2).

#### A. Interrogatories 5 through 8

In the motion to compel Plaintiff asserts Defendants' responses to Interrogatories "Nos. 5-8," requesting information regarding "comparator information," and Interrogatories "Nos. 10-13," seeking correspondence "regarding Plaintiff's employment" were not complete. (ECF No. 60 at 3-4, 8). These interrogatories and responses are as follows:

> **5. Identify all instances where Defendant offered, provided, or otherwise communicated about FMLA leave to Plaintiff, including: a) Dates and individuals involved b) Documents or policies referenced c) All communications between Defendant and any third-party administrator (including UNUM) d) Determinations regarding FMLA eligibility e) Documentation requirements imposed.**

ANSWER: Defendants object to Interrogatory No. 5 on the grounds that it is vague, unduly burdensome, overly broad, and not proportional to the needs to the case. Identifying all instances requested creates an undue burden on Defendants. The phrase “documentation requirements imposed” is vague. Identifying “All communications between Defendant and any third-party administrator (including UNUM)” is overbroad and unduly burdensome because the communications are not limited in temporal scope or communications related to Plaintiff. Further, the benefit that all such communications would provide Plaintiff would be significantly outweighed by the cost of identifying and providing information about all communication with any third-party administrator. What is more, this information requested have little importance to any of Plaintiff's claims. Subject to and without waiving these objections, please refer to the documents produced in response to Plaintiff’s Request for Production of Documents and in Defendants’ initial disclosures, including the FMLA policy. Defendants provided Plaintiff a document entitled “FMLA – Employee Rights and Responsibilities” during Plaintiff's employment with Defendants. *See* NEWREZ_000037. Defendants also provided Plaintiff with its FMLA policy during Plaintiff's employment. Defendants do not have any communications between a third-party administrator regarding Plaintiff and FMLA leave. Plaintiff never made a request for FMLA leave while employed with Defendants.

(ECF No. 65-1 at 5-6).

The Court concludes Defendants’ response to Interrogatory No. 5 was adequate. Plaintiff fails to meet his burden of showing that any additional response would be relevant to his claims for relief.

**6. Identify each individual who reviewed, approved, or denied Plaintiff’s requests for paid time off (PTO) in October 2022, and describe: a) The basis for their decisions b) Communications regarding the requests c) Documentation required or provided d) Timing of responses e) Any alternative options offered**

ANSWER: Defendants object to Interrogatory No. 6 on the grounds that it is vague, including the statements “Any alternative options offered” and “Documents required or provided.” Subject to and without waiving these objections, Justin Bradley was responsible for reviewing and approving Plaintiff's paid time off requests. Please also refer to the documents produced in response to Plaintiff's Request for Production of Documents. Please also see the PTO policy and November 14, 2022, email from Justin Bradley provided in Defendants’ initial disclosures.

(ECF No. 65-1 at 6-7).

The Court concludes Defendants' response to Interrogatory No. 6 was adequate. Plaintiff fails to meet his burden of demonstrating how any additional response would be relevant to his claims for relief.

> **7. Describe in detail all steps Defendant took to investigate Plaintiff's allegations regarding unpaid wages, including: a) Communications with payroll b) Records reviewed c) Individuals involved in the investigation d) Findings and conclusions e) Any corrective actions taken**
> ANSWER: Defendants object to Interrogatory No. 7 on the grounds that it is vague, including with respect to "allegations regarding unpaid wages." This request lacks temporal scope. Subject to and without waiving this objection, please refer to the documents produced in response to Plaintiff's Request for Production of Documents, including those related to Plaintiff's paystub and the method of payment to Plaintiff in June 2022. These emails detail the individuals involved, and steps that Defendants took in response to Plaintiff.

(ECF No. 65-1 at 7).

The Court concludes Defendants' response to Interrogatory No. 7 was adequate. Plaintiff fails to meet his burden of demonstrating how any additional response would be relevant to his claims for relief.

> **8. Describe each instance during Plaintiff's employment where Defendant hosted a lunch, team-building event, or other activity requiring employees to leave the workplace, including: a) Expectations for hourly employees b) Time tracking procedures c) Compensation policies d) Travel requirements e) Documentation of attendance and pay**
> ANSWER: Defendants object to Interrogatory No. 8 on the grounds that it is vague, unduly burdensome, overly broad, and not proportional to the needs of the case. The requested information on "team-building event, or other activity," "travel requirements," and "documentation of attendance and pay" is vague. Identifying all lunches, events, or "other activity requiring employees to leave the workplace" for all employees across a 3 year period, and identifying all "travel requirements" for such events would create an undue burden on Defendants. Further, information on such events has no importance on any of Plaintiff's claims. The significant expense of identifying and describing each event is outweighed by the insignificant benefit such information would provide Plaintiff, if any.

> Subject to and without waiving these objections, in Spring 2022, Defendants held an off-site team building event in Tempe, Arizona that Plaintiff attended. Please also see the wage and hour policy and time and attendance policy produced in response to Plaintiff's Request for Production of Documents for information relating to travel for non-exempt employees, compensable time when traveling, timekeeping procedures, and travel, expenses, and reimbursement policy.

(ECF No. 65-1 at 7-8).

The Court concludes Defendants' response to Interrogatory No. 8 was adequate. Plaintiff fails to meet his burden of demonstrating how any additional response would be relevant to his claims for relief.

Plaintiff also asserts Defendants' responses to Interrogatory Nos. 10-13 were incomplete. (ECF No. 60 at 8). These interrogatories and Defendants responses are as follows.

> **10. Identify each individual who reviewed or was aware of Plaintiff's medical documentation submitted in 2022, including: a) Dates of receipt b) Content reviewed c) Actions taken d) Storage and handling procedures e) Confidentiality measures**
> ANSWER: Defendants object to Interrogatory No. 10 on the grounds that it is vague. The requested "medical documentation submitted in 2022" is not clearly defined. Further, "b) Content reviewed c) Actions taken d) Storage and handling procedures e) Confidentiality measures" are vague requests. Defendants further object to the extent this interrogatory is overbroad and not proportional to the needs of the case, and to the extent it seeks information not within Defendant's custody or control. Defendant is not aware of all individuals to whom Plaintiff provided medical documentation outside of Defendant's management or human resources personnel, nor should it be required to identify such individuals. Subject to and without waiving these objections, Plaintiff provided Justin Bradley with a doctor's note in 2022.

(ECF No. 65-1 at 8).

The Court concludes Defendants' response to Interrogatory No. 10 was adequate. Plaintiff fails to meet his burden of demonstrating how any additional response would be relevant to his claims for relief.

> **11. Describe in detail all steps taken to provide Plaintiff with reasonable accommodations, including: a) The 2020 standing desk request b) The 2022 accommodation requests c) Interactive process documentation d) Decision-making timeline e) Implementation steps**
> ANSWER: Defendants object to Interrogatory No. 11 on the grounds that it is vague, specifically the requests "Decision-making timeline" and "Implementation steps." Subject to and without waiving this objection, Defendants granted Plaintiff his request for a standing desk in 2020. In 2022, Plaintiff made a request to take his standing desk home. Plaintiff resigned from employment before his request could be evaluated. Plaintiff made no other accommodation requests while employed with Defendants.

(ECF No. 65-1 at 8-9). The Court concludes Defendants' response to Interrogatory No. 11 was adequate. Plaintiff fails to meet his burden of demonstrating how any additional response would be relevant to his claims for relief.

> **12. Identify and describe all instances where Defendant approved, denied, or failed to act on Plaintiff's requests for leave during October 2022, including: a) Type of leave requested b) Decision-makers involved c) Basis for decisions d) Communications with Plaintiff e) Documentation maintained**
> ANSWER: Defendants object to Interrogatory No. 12 on the grounds that it is vague. "Leave" is not clearly defined and "failed to act on" is vague. Subject to and without waiving these objections, Plaintiff did not make a request for leave in October 2022.

(ECF No. 65-1 at 9). The Court concludes Defendants' response to Interrogatory No. 12 was adequate. Plaintiff fails to meet his burden of demonstrating how any additional response would be relevant to his claims for relief.

> **13. Describe the timeline of Plaintiff's compensation during June and July 2022, including: a) Dates and amounts of payments b) Issues identified c) Resolution steps taken d) All modifications made to payroll records or timecards e) Identity of individuals making modifications**
> ANSWER: Please see the documents produced in response to Plaintiff's Request for Production of Documents, including Plaintiff's paystubs, timeclock history, and July 12, 2022 email chain regarding Plaintiff's pay, which provide the information requested in Interrogatory No. 13.

(ECF No. 65-1 at 8-9).

The Court concludes Defendants' response to Interrogatory No. 13 was adequate. Plaintiff fails to meet his burden of demonstrating how any additional response would be relevant to his claims for relief.

**B. Requests for Production**

Plaintiff objects to Defendants' response to his Requests for Production Nos. 7 through 9, referencing "comparator data." (ECF No. 60 at 3). These requests for and Defendants' responses are as follows.

> **7. Military Status Documents: Produce all policies, procedures, and training materials regarding: a) USERRA compliance b) Military leave policies and procedures c) Accommodations for veterans with service-connected disabilities d) Training attendance records for HR and management regarding USERRA**
>
> RESPONSE: Defendants object to Request No. 7 on the grounds that it is vague, overly broad, unduly burdensome, and not proportional to the needs of the case. Producing documents relating to all accommodations for all veterans with service-connected disabilities is an overbroad request that is unduly burdensome. Further, identifying and producing such information relating to other individuals would provide little benefit, if any, the Plaintiff's claims in this case in light of the cost and burden of producing such information. What is more, the records requested have little importance to any of Plaintiff's claims. Further, "training and attendance records for HR and management regarding USERRA" is vague, unduly burdensome, and overbroad. The request does not provide sufficient detail to reasonably identify the information requested. The request also lacks any temporal or geographic scope and does not identify the individuals whose records are being requested. Subject to and without waiving these objections, please see the documents produced with Defendants' Initial Disclosures and the documents that Defendants produced in response to Plaintiff's Request for Production of Documents, including the military leave policy.

(ECF No. 65-1 at 20).

The Court concludes Defendants' response to Request for Production No. 7 was adequate. Plaintiff fails to meet his burden of demonstrating how any additional response would be relevant to his claims for relief.

> **8. Team Events Documentation: Produce all documents regarding: a) Policies and practices regarding extended team-building lunches b) Documentation of expectations for hourly employees attending such**

> **events c) Records of timekeeping procedures for off-site events d) Communications regarding attendance requirements and compensation**
> RESPONSE: Defendants object to Request No. 8 on the grounds that it is vague, overly broad, unduly burdensome, and not proportional to the needs of the case. The request lacks any temporal scope to the documents requested and would include records outside of the time that Plaintiff worked for Defendants. Further, requesting all "communications regarding attendance requirements and compensation" is vague, overly broad, and unduly burdensome because it encompasses information relating to other employees outside the time that Plaintiff worked for Defendants. Further, the benefit that such records would provide Plaintiff, if any, would be significantly outweighed by the cost of identifying and producing such information. What is more, the records requested have little importance to any of Plaintiff's claims. Subject to and without waiving these objections, please see the documents produced with Defendants' Initial Disclosures and the documents that Defendants produced in response to Plaintiff's Request for Production of Documents, including Wage and Hour policy, Time and Attendance policy, and Plaintiff's expense report.

(ECF No. 65-1 at 20-21). The Court concludes Defendants' response to Request for Production No. 8 was adequate. Plaintiff fails to meet his burden of demonstrating how any additional response would be relevant to his claims for relief.

> **9. Travel and Expense Documentation: Produce all documents regarding: a) Policies and procedures related to mileage reimbursement b) Records of Plaintiff's work related travel and reimbursement requests c) Records of travel reimbursements for comparator employees**
> RESPONSE: Defendants object to Request No. 9 on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case, including to the extent that it seeks "records of travel reimbursements for comparator employees." Identifying and producing travel reimbursement records for all non-exempt employees with no temporal or geographic limitation is an overly broad request that would create an undue burden on the Defendants. Further, the benefit that such records would provide Plaintiff, if any, would be significantly outweighed by the cost of identifying and producing such information. What is more, the records requested have little importance to any of Plaintiff's claims. Subject to and without waiving this objection, please see the documents produced with Defendants' Initial Disclosures and the documents that Defendants produced in response to Plaintiff's Request for Production of Documents,

> including Wage and Hour policy, Time and Attendance policy, Time, Expense, and Reimbursement Policy, and Plaintiff's expense report.

(ECF No. 65-1 at 20-21).

The Court concludes Defendants' response to Request for Production No. 9 was adequate. Plaintiff fails to meet his burden of demonstrating how any additional response would be relevant to his claims for relief.

Plaintiff also asserts Defendants' responses to Plaintiff's First Requests for Production Nos. 12-15 were inadequate. (ECF No. 60 at 4). However, the copies of Plaintiff's First Requests for Production attached to both Defendants' response to the motion to compel and Plaintiff's reply in support of this motion include only ten requests for production. (ECF No. 65-1 at 15-22; ECF No. 69 at 40-42). There are no Requests for Production Nos. 12-15 in the record and therefore no responses for the Court to assess.

**C. Plaintiff's Request to Compel Specific Information**

Plaintiff asks the Court for an order requiring Defendants to:

> Produce complete comparator data for Ashlei Shaw-Pulliam, Falisha Coleman, and other similarly situated employees as requested in RFP Nos. 7-9 and Interrogatory Nos. 5-8.
>
> Including but not limited to: all details, documents, and information pertaining to the notification, submission, processing, and approval/denial process under the ADA, and FMLA.

(ECF No. 60 at 47-48)..

Only RFP No. 9 seeks comparator data, and this request is in the context of involves travel reimbursement. Plaintiff has not shown how travel reimbursement is relevant to his claims. Nor do Interrogatories No. 5 through 8 mention comparators. However, with regard to discovery regarding comparators, attached to Plaintiff's motion to compel is an email from Defendants' counsel to Plaintiff stating:

> … Defendants do not believe Flisha Coleman is an appropriate comparator for this case because she was not similarly situated in all material respects. She did not work in the legal department and had other supervisors. You asserted that you do believe she was similarly situated because she asked for leave around the same time you did and dealt with the same individuals in human resources. … As to Ashlei Shaw-Pulliam, we also do not believe

> she is an appropriate comparator. … I looked into this issue and the reason she was not similar[ly] situated in all material respects is that Ms. Shaw-Pulliam was a Paralegal III, not a Paralegal II, and may not have reported to the same supervisors as you did at all times. There may be other issues that make her an inappropriate comparator as well. However, … we will review this request with our clients and provide a further response regarding the information requested for Ms. Shaw-Pulliam. …

(ECF No. 60 at 47-48).

Plaintiff bears the burden of presenting sufficient evidence of discrimination with regard to his USERRA and ADA claims. Comparator evidence is relevant to whether a plaintiff was subjected to disparate treatment. *See Siazon v. Hertz Corp.*, 847 F. App'x 448, 450–51 (9th Cir. 2021). To raise an inference of discrimination, the plaintiff must be able to point to one or more valid comparators, or present other circumstances surrounding the adverse action that create an inference of discrimination. *See Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). With regard to establishing similarly situated employees were treated more favorably, i.e., to make a colorable showing that the reason for any adverse action was discriminatory, comparator evidence is one permissible method, although not the only method, of establishing an employer's alleged non-discriminatory reason for the adverse action was pretextual. A plaintiff bears the burden of establishing that the compared employees were similarly situated. *E.g.*, *Cooper v. Window Rock Unified Sch. Dist.* , No. CV-20-08346, 2023 WL 2463765, at *7 (D. Ariz. Mar. 10, 2023); *Enriquez v. City of Scottsdale*, No. CV-19-04382, 2022 WL 1773829, at *6 (D. Ariz. June 1, 2022).

Valid comparators are those shown to be similar to the plaintiff "in all material respects," for example when they have the same job position, engage in the same relevant conduct, and have similar records regarding any discipline. *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006); *McDaniels v. Group Health Coop.*, 57 F. Supp. 3d 1300, 1311 (W.D. Wash. 2014). "The employees' roles need not be identical; they must only be similar 'in all material respects.'" *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010), *quoting Moran*, 447 F.3d at 755. "Materiality will depend on

context and the facts of the case." *Hawn*, 615 F.3d at 1157. Comparators may be those who are similarly situated regarding work assignments, job performance history, and job location. *Sampson v. Vita-Mix Corp.*, No. 17CV233, 2018 WL 3064486, at *9 (S.D. Cal. June 21, 2018). The Eighth Circuit Court of Appeals has found a comparator similar to a plaintiff when the comparator was supervised by the same individual, was subjected to the same work standards, and engaged in similar conduct. *See Marquez v. Bridgestone/Firestone, Inc.*, 353 F3d 1037, 1038 (8th Cir. 2004)

Accordingly, with regard to Plaintiff's USERRA claim, a valid comparator might be a veteran or reserve service member who was employed in a similar position, i.e., as a paralegal answering to Mr. Bradley, during the time in question (from 2020 through 2022). With regard to Plaintiff's ADA claim, a valid comparator would be a disabled person who served in a similar position, in the same office location, and requested accommodation for their disability during the same time period. In the context of Plaintiff's FMLA claim, a valid comparator would be a person who served in a similar position, in the same office location, during the same time period, who requested FMLA leave. *See Vasquez*, 349 F3d at 641.

Plaintiff has asserted "Flisha Coleman" is a comparator. However, although Ms. Coleman has alleged an FMLA claim against Newrez in a lawsuit, she was not a litigation paralegal and was not supervised by Mr. Bradley. Accordingly, she is not a valid comparator because she was not similar to Plaintiff in all material respects with regard to her employment by Defendants. Defendants assert "Ms. Shaw-Pulliam was a Paralegal III, not a Paralegal II, and *may not have* reported to the same supervisors as [Plaintiff] did *at all times*." (ECF No. 65 at 5) (emphasis added). However, if Ms. Shaw-Pulliam was a veteran or reserve member, or if she sought an accommodation pursuant to the ADA, or sought FMLA leave, she might be a valid comparator because she was a paralegal and may have reported to the same supervisors as Plaintiff during some portion of the relevant time period. *See Hawn*, 615 F.3d at 1157 (holding "[i]t was error for the

district court to impose a strict 'same supervisor' requirement," and stating that "whether two employees are similarly situated is ordinarily a question of fact").

Alternatively, or additionally, given how burdensome sifting through potentially hundreds of employee records may be, and given that the burden is generally on the plaintiff to identify comparators, *see Anderson v. Intel Corp.*, No. CV-19-00743, 2021 WL 1087127, at *10 n.8 (D. Ariz. Mar. 22, 2021), the Court finds it reasonable to limit defendants' burden, with regard to future requests for discovery regarding comparators, to the production of information regarding employees who are or were uniformed service members, who requested FMLA leave or requests for accommodation due to a disability, which employees subsequently filed retaliation, discrimination, or other complaints (such as complaints alleging violation of these statutes or the USERRA) with the Arizona Attorney General, the EEOC, or in the state or federal courts, or seeking arbitration, during the relevant time period. *See Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 527-28 (D. Nev. 1997), *citing McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 62 (E.D. Pa. 1979);[7] *Harris v. Bechtel Marine Propulsion Corp.*, No. 20-CV-00360, 2022 WL 3754736, at *3 (D. Idaho Aug. 30, 2022).

With regard to Plaintiff's request that the Court order Defendants to "[p]roduce all HR/management communications regarding Plaintiff's employment, including Microsoft Teams messages, calendar invites, and other electronic communications as requested in RFP Nos. 12-15 and Interrogatory Nos. 10-13," (ECF No. 60 at 8), as noted *supra*

---

[7] Describing *McLain*, the *Jackson* court noted:

> …the plaintiff propounded an interrogatory, requesting information regarding prior complaints of discrimination. The district court affirmed the magistrate judge's order directing the defendant to answer interrogatory twenty-nine subject to the following provisions: (1) the answers shall be restricted geographically to the facility where the plaintiff was employed; (2) the answers must be limited to the time period of the plaintiff's employment; and (3) the answers shall be limited to the subject matter of racial discrimination. *McClain*, 85 F.R.D. at 62-63; *see also Robbins*, 105 F.R.D. at 58 (interrogatories were overbroad because they contained "no limitations as to time, type of action complained of ..., or type of discrimination alleged....").

173 F.R.D. 524, 528.

Plaintiff's Requests for Production Nos. 12 through 15 are not in the record. Nor do Interrogatories Nos. 10 through 13 in Plaintiff's First Set of Interrogatories request this information. To the extent Plaintiff has requested this disclosure, Plaintiff fails to establish that these "communications" are relevant to his claims, not already within his possession, and that this information is not obtainable by other means such as through deposition or requests for admission. Additionally, Defendants' argument that this request is overbroad is sustained.

Plaintiff would presumably be limited to some discovery regarding the basis for the "decision," if any, to convert his position to an hourly rather than a salaried position, and the decision to "monitor [his] conduct at work" and whether this monitoring was in place with regard to other employees in the same position. Accordingly, Defendants shall provide or supplement their production of discovery with regard to this issue. The Court concludes that discovery regarding Plaintiff's "caseload size" and the "caseload size" of "other employees within Internal Legal …" (ECF No. 60 at 8-9), is not relevant to Plaintiff's claims for relief.

Furthermore, discovery regarding "all Microsoft Teams communications and complete unedited email chains involving Justin Bradley, Mike Griffin, Chavez Turner, Plaintiff, HR and Internal Legal Leadership (Justin Bradley, Andrew Westle, Mike Griffin, Heather Ruth, [and] Spencer Monses" regarding the "modification" of Plaintiff's timecard, and "punch data," to the extent not previously produced, is not relevant. Nor is Plaintiff entitled to any discovery regarding Defendants' counsel's comment regarding Rule 11, which does not involve the terms and conditions of Plaintiff's employment, or his allegations regarding violations of the USERRA, the ADA, or the FMLA.[8]

---

[8] Plaintiff sent a demand letter to Newrez on January 10, 2024, offering to settle "all claims" asserted before the Arizona Attorney General's Office pursuant to the Arizona Employment Protection Act, the Arizona Civil Rights Act, and the Americans with Disabilities Act, regarding "disability discrimination, unpaid wages, failure to accommodate, retaliation, and emotional distress caused by a hostile work environment…" (ECF No. 1 at 48). Plaintiff mentioned settlements for hundreds of millions of dollars awarded in "[s]imilar" cases, providing the titles of the cases but no citations or indications of what courts exercised jurisdiction in those matters. (ECF No. 1 at 49). Counsel for Newrez responded that the company had acted lawfully

Additionally, Plaintiff fails to show that discovery regarding his "requests for further training" are relevant.

Accordingly,

**IT IS ORDERED that** Plaintiff's motion to compel at ECF No. 60 is **denied** except to the extent provided explicitly herein.

Dated this 2nd day of June, 2025.

Camille D. Bibles
United States Magistrate Judge

at all times, and that they were "uninterested in responding to [Plaintiff's] unrealistic settlement demands." (ECF No. 1 at 51). Newrez, through counsel, asserted "any lawsuit you would file may violate the Federal Rules of Civil Procedure Rule 11 and any state law equivalent against improper and/or frivolous lawsuits." (*Id.*). Counsel asserted they would not hesitate to seek sanctions "while vigorously defending any suit you would file." (*Id.*).